IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JERRY MEHMEN, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:06-cv-307 |
| | § | |
| COLLIN COUNTY, TEXAS, | § | |
|    Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court are the following:

1. Plaintiff's Motion for Partial Summary Judgment (de # 16);

2. Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (de # 18);

3. Defendant's Objection and Motion to Strike Plaintiff's Summary Judgment Evidence (de # 19);

4. Defendant's Motion for Summary Judgment and Brief in Support (de # 17);

5. Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support (de # 20); and

6. Defendant's Reply in Support of its Motion for Summary Judgment (de # 21).

Having considered the motions and the briefing responsive thereto, the court is of the opinion that the Defendant's Motion to Strike should be GRANTED, the Plaintiff's Motion for Partial Summary Judgment should be DENIED, and the Defendant's Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART.

**OBJECTIONS**

In his Motion for Partial Summary Judgment, Jerry Mehmen ("Mehmen") attached a purported email from David Holstein as Exhibit 3. The email is addressed to Chris Humble whose connection with this case neither party has attempted to explain. In the email dated April 28, 2005, Holstein communicated advice on behalf of the Center for Medicare and Medicaid Services to Humble regarding a concern he voiced. Collin County filed its Motion to Strike this evidence on the basis that it has not been properly authenticated, lacks foundation, and contains hearsay. (Mt. to Strike 1.) Mehmen has not submitted a response to the Motion. "In the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition." LOCAL RULE CV-7(d). Because Mehmen appears to have no opposition to Collin County's Motion to Strike, and because the court finds the Motion to be independently meritorious, Collin County's Objection to the Holstein email is sustained.

### I. BACKGROUND

This case arises out of a dispute between Mehmen and his current employer, Collin County. Mehmen seeks a declaratory judgment that no "qualifying event" occurred under 42 U.S.C. § 300bb-3. Such a result would entitle him to the reimbursement of certain health insurance premiums paid in the wake of Mehmen's having to take extended leave following an auto accident. (Pl.'s Mot. for Partial Summ. J. 1.)

Mehmen was, and still is, an employee of the Sheriff's Department of Collin County, Texas. (Pl.'s Mot. 2.) On October 10, 2005, Mehmen was involved in an auto accident that caused injuries sufficiently severe that he was unable to return to work for an extended time. (*Id*.) On or about November 3, 2005, Mehmen was placed on leave under the Family and Medical Leave Act

("FMLA") by Collin County.  (Def.'s Mot. for Summ. J. 3.)  At the time he was placed on leave, Mehmen had accrued a staggering amount of personal, sick, and vacation time (hereinafter "off time").  (*Id*.)  Between the three classifications, Mehmen had 1174.62 hours available.  (Pl.'s Mot. 2.)  In order to continue drawing his full salary, Mehmen used those hours while on medical leave.  (*Id*.)  Mehmen expended 480 hours of off time while on FMLA leave.  (*Id*.)  During the entirety of Mehmen's FMLA leave, Collin County preserved his status as a beneficiary of its group health care coverage as required by the FMLA.  (Def.'s Mot. for Summ. J. 3-4.)

When his eligibility under the FMLA expired in late January of 2005, Mehmen was still unable to return to work.  (*Id*. at 4.)  On February 1, 2005, Collin County offered continuing coverage to Mehmen, as it contends was required by the Public Health Services Act ("PHSA"), as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  (*Id*.)  Mehmen accepted Collin County's offer and paid $542.64 per month for health insurance for the following three months while he continued to recover from his injuries.  (*Id*.)  From February 1, 2005 until April 18, 2005, he continued to make use of his accrued time off while recovering from his injuries, and he received his normal salary.  (Pl.'s Mot. 3.)  On April 18, 2005, Mehmen returned to work.  (*Id*.)  At that time, he was reinstated into Collin County's group health insurance plan.  (Def.'s Mot. for Summ. J. 4.)

## II.  LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. DISCUSSION AND ANALYSIS

The Family and Medical Leave Act was passed in 1993 in large part to forestall what was often a choice between job security and attending to major life events. *See generally* 29 U.S.C. § 2601 (2006). The FMLA requires employers to allow an "eligible employee" to take up to twelve weeks of unpaid leave for a number of occurrences, including the unfortunate circumstance of "a

serious health condition that makes the employee unable" to work. 29 U.S.C. § 2612(c) (2006). Section 2614(c) requires employers to provide health insurance coverage "at the level and under the conditions coverage would have been provided" had the employee not made use of FMLA leave. 29 U.S.C. § 2614(c) (2006) (internal quotation marks omitted).

The Consolidated Omnibus Budget Reconciliation Act, passed in 1986, was a sprawling bill that included several provisions that form the basis of this dispute. Certain amendments to the PHSA are components of COBRA. The PHSA, as amended by COBRA, requires certain governmental employers to provide any "qualified beneficiary who would lose coverage under the [health care] plan as a result of a qualifying event" with "continuation coverage." 42 U.S.C. § 300bb-1 (2006). Continuation coverage, boiled down to its basics, is coverage under the employer's group health care plan at the same level as before the "qualifying event," except that the employee can be required to pay the premiums and coverage need only be offered for the eighteen months immediately following the qualifying event. 42 U.S.C. § 300bb-2 (2006). A qualifying event is defined as

> any of the following events which, but for the continuation coverage required under this title, would result in the loss of coverage of a qualified beneficiary:
> (1) The death of the covered employee.
> (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
> (3) The divorce or legal separation of the covered employee from the employee's spouse.
> (4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act.
> (5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

42 U.S.C. § 300bb-3 (2006). In this case, Section 300bb-3(2) is the potential qualifying event.

As discussed above, Mehmen was unable to work following his accident. Therefore, he took

FMLA leave, and because he had accrued sufficient off time, he was able to continue to receive his salary. At the expiration of his twelve week FMLA leave, Mehmen was still unable to return to work. Collin County argues that Mehmen's continued recovery constituted a qualifying event, triggering its duty to offer continuation coverage. Specifically, Collin County argues that, because Mehmen was unable to render services, his hours were reduced (to zero), giving rise to the qualifying event. *Id*. Collin County did make such an offer, Mehmen accepted it, and, pursuant to the statute, Mehmen paid the monthly premiums so that his health insurance coverage would continue. Mehmen argues, on the other hand, that no qualifying event occurred. Because he had enough off time after his FMLA leave expired to continue to draw his full-time salary, he argues that he did not suffer a "reduction of hours," and thus that no qualifying event occurred. *Id*. In other words, though he performed no services, he was paid as a full-time employee during his recuperation. Resolution of this dispute requires an interpretation of the statute. The court is unaware of a single case construing the scope of the "reduction of hours" language found in Section 300bb-3. Lacking such guidance, the court turns to customary principles of statutory interpretation.

The plain language of the statute must be the court's North Star. *E.g.*, *United States v. Uvalle-Patricio*, 478 F.3d 699, 703 (5th Cir. 2007). In addition, each section of a statute should be construed in harmony with the other sections of the statute so as to produce a cohesive expression of policy. *Id*. In the event of statutory ambiguity, the court must construe the statute so as to effectuate the intent of Congress in enacting the statute. *See Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).

When Congress has left the interpretation of a statute to an administrative agency, that agency's interpretation is to be accorded deference in appropriate circumstances. *Chevron v. Natural*

*Res. Def. Council*, 467 U.S. 837, 842-43 (1994). If the intent of Congress is clear as to the statute's application to the precise issue before the court, "that is the end of the matter," because both the court and the agency must yield to the unambiguous expression of Congressional intent. *Id*. at 843. However, where "Congress has not directly addressed the precise question at issue," the court is to defer to the agency's "permissible construction of the statute." *Id*. Where, as here, *see* 42 U.S.C. § 300bb-1, Congress has expressly delegated policy-making authority to an agency, that agency's interpretation controls unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44; *Long Island Care at Home, Ltd. v. Coke*, __U.S.__, 127 S. Ct. 2339, 2345-46 (2007).

The plain language of the statute is ambiguous. One's "employment" could be measured in terms of hours compensated, as Mehmen argues, or in terms of hours during which the employee renders services, as Collin County argues. The purpose of the PHSA is clear from a House Report accompanying COBRA. There, Congress expressed a concern over the "growing number of Americans without any health insurance coverage." H.R. REP. NO. 99-241, pt. II, at 44, *reprinted in* 1986 U.S.C.C.A.N. 42, 622. Either construction of the language at issue in Section 300bb-3(2) would effectuate Congress' purpose of extending health insurance coverage to more Americans. Whether one construction or the other would be more effective in carrying out that purpose would be fact dependent. There may be circumstances where, as here, an employee is on a payroll but is not performing services. In that instance, Mehmen's construction of the statute would go further towards fulfilling the intent of Congress by giving greater breadth to the PHSA. However, there may also be instances in which an employee is covered by a group health plan but is not being paid for his work, such as when a person regularly offers his services as an eleemosynary gesture. In that

instance, Collin County's construction of the statute would extend coverage to the individual, carrying out the intent of Congress.

Finding no clear choice between the parties' proffered constructions of the statute based on the plain language thereof, the court turns to the relevant agency interpretation. In providing guidance as to when a qualifying event occurs, the Internal Revenue Service has stated that a reduction of hours occurs "wherever there is a decrease in the hours that a covered employee is required to work *or actually works*." Treas Reg. § 54.4980B-4 (emphasis added). The regulation goes on to add that "an absence from work due to disability...is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment." *Id*. The first quoted portion of the regulation clearly contemplates the provision of services as the metric by which to determine the existence of a qualifying event. Moreover, the second quoted portion embraces the exact situation Mehmen faced. Mehmen would essentially have the court interpret that portion of the regulation to mean that only an uncompensated absence from work due to disability constitutes a reduction of hours to trigger a qualifying event. The court does not wish to insert modifiers into the second quoted portion of the regulation, nor could it do so under *Chevron*. The court, therefore, concludes that Section 300bb-3(2)'s "reduction of hours" language refers to a reduction of hours during which the employee actually performs job functions. This resolution is harmonious with Congress' expressed intent, because, though it is adverse to the party the PHSA was designed to protect, it does not deny the protections Congress sought to extend. In other words Mehmen was at no stage denied health care coverage. Rather, at all times, coverage was available under the PHSA. This court's finding is simply that Mehmen, while on non-FMLA leave, was not entitled to rely on Collin County to continue to pay for his health insurance.

The court's conclusion is further supported by a Treasury Determination stating that "[t]he reasons for which an employee has...a reduction of hours of employment generally are not relevant in determining whether the...reduction of hours is a qualifying event." T.D. 8812, 1999-1 C.B. 533. That Treasury Determination goes on to say that a leave of absence can constitute a qualifying event. Lending additional support to the court's conclusion, at least in the present context, is Congress' purpose in enacting the FMLA. Among the stated (and codified) purposes behind the FMLA is a desire "to balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1) (2006). The court's construction of the statute, as discussed above, preserves Congress' intent, expressed in COBRA, that health care coverage be provided to eligible employees who experience a qualifying event while preserving the sensitivity to the interests of employers considered by Congress in the FMLA. Mehmen's construction, on the other hand, is less mindful of the legitimate interests of employers. Collin County, and other governmental bodies similarly situated, do not generally wish to pay for the health care coverage of employees who are physically unable to render services. Through the FMLA, Congress has mandated that employers do so for up to twelve weeks. 29 U.S.C. § 2614(c) (2006). However, Mehmen's interpretation could potentially extend an employer's provision of health care coverage to unfit employees indefinitely. In Mehmen's case, he had nearly 700 hours of unused time off at the end of his FMLA leave. If the court were to accept his interpretation of the statute, he would be entitled to roughly an additional seventeen weeks of health care at the expense of Collin County. This is not the result intended by Congress in the FMLA or approved by the Internal Revenue Service, the agency charged with the interpretation of the PHSA.

Thus interpreted, it is clear that Mehmen experienced a qualifying event under the statute.

His inability to return to work upon the expiration of his FMLA leave was a "reduction of hours" under the statute. In addition, "but for the continuation coverage required" by the PHSA, Mehmen's reduction of hours to zero would have resulted in his loss of coverage. (Def.'s Mot. for Summ. J. Ex. A ¶ 5.) As such, the court is of the opinion that no triable issue exists as to the existence of a qualifying event with regard to Mehmen. Collin County was thus required by statute to offer continuing coverage under 42 U.S.C. § 300bb-1. Collin County unquestionably did so, and Mehmen accepted the offer. Thus, for the three months that Mehmen was neither on FMLA leave nor active duty, the requirement that he pay the premiums for his health care coverage (in order to maintain the same level of coverage as under the group health plan) was not in error.

The only other matter left for determination by the court concerns expenses incurred subsequent to an offer made by Collin County under Rule 68 of the Federal Rules of Civil Procedure. Rule 68 allows "a party defending against a claim" to make a written offer to its adversary that judgment be taken against it in some amount of money. FED. R. CIV. P. 68. If that offer is rejected and the rejecting party later obtains a final judgment less favorable than the extra-judicial offer, the offering party shall be compensated for the costs incurred subsequent to the offer. However, Rule 68 is inoperative in this circumstance. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981); *Louisiana Power and Light Co. v. Kellstrom*, 50 F.3d 319, 333-34 (5th Cir. 1995).

### IV. CONCLUSION

Based on the foregoing, the court is of the opinion that Collin County's Motion to Strike should be, and hereby is, GRANTED. On the basis of its interpretation of Section 300bb-3 the court is also of the opinion that Mehmen's Motion for Partial Summary Judgment should be, and hereby is DENIED. Finally, the court is of the opinion that Collin County's Motion for Summary Judgment

should be, and hereby is, GRANTED with respect to the merits of Mehmen's pursuit of a declaratory judgment and DENIED with respect to Collin County's pursuit of post-offer costs pursuant to Rule 68.

    IT IS SO ORDERED.

    **SIGNED this the 13th day of November, 2007.**

    _____
    RICHARD A. SCHELL
    UNITED STATES DISTRICT JUDGE